Alan Harris (SBN 146079)
Priya Mohan (SBN 228984)
David Garrett (SBN 160274)
Min Ji Gal (SBN 311963)
HARRIS & RUBLE
655 N. Central Ave., 17th Fl
Glendale, CA 91203
Telephone: 323.962.3777
Facsimile: 323.962.3004
harrisa@harrisandruble.com
dgarrett@harrisandruble.com
mgal@harrisandruble.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| J. COSTA and K. PAYNE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SMUGGLER, LLC, a Delaware Limited Liability Company fka Smuggler, Inc., a California Corporation; RARE BIRD HOLDINGS, INC., a Delaware Corporation; BRIAN CARMODY, an individual; PATRICK MILLING-SMITH, an individual; DIVISION7, LLC, a Delaware Limited Liability Company; and DOE 1 through and including DOE 10.<br><br>Defendants. | Case No. 2:23-cv-01468-WLH-RAO<br>Assigned to Hon. Wesley L. Hsu<br><br>(Removed from Los Angeles Superior Court, Case No. 22STCV29530<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CONDITIONAL CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT OF MOTION**<br><br>Date: September 29, 2023<br>Time: 1:30 p.m.<br>Ctrm: 9B, 9th Flr<br><br>Complaint Filed: February 10, 2022<br>Removed: April 7, 2023<br>First Am. Compl: July 11, 2023 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE** that, on September 29, 2023, at 1:30 p.m., in Courtroom 9B of the above-captioned Court located 350 West 1st Street, Los Angeles, California 90012, or on such other date and time as the Court may designate, the Honorable Wesley L. Hsu presiding, Plaintiffs John Costa and Kevin Payne ("Plaintiffs") will move for an order granting preliminary approval of a class-wide settlement reached in the above-captioned action, as well as for conditional certification, for settlement purposes only, for the Class Members defined in the Stipulation of Class Action Settlement and Release ("Settlement Agreement").

Defendants have agreed to a Total Settlement Amount of $1,350,000. The funds will be distributed to the Class Members defined as

> [A]ll persons, excluding those on permanent Staff payroll who are employed on a continuous basis, who were paid wages by SMI and/or DSLLC on account of services provided in the production of Motion Pictures during the Class Period in California.

Settlement Agreement ¶ A. 6.

Approximately 7,650 Class Members workers are eligible to recover, and the Total Settlement Amount represents a possible gross recovery of approximately $176.47 and a net of $98.69 for each worker, assuming one hundred percent class participation. Here, the Net Settlement Proceeds will be distributed to each Class Member equally. That is, after all deductions from the common fund, the net amount will be divided equally between the Class Members who did not opt out. The Settlement provides for Net Settlement Proceeds of $755,000 after deductions for Attorney's Fees of $450,000, reimbursement of out-of-pocket Costs of up to $35,000, an Incentive Award of up to $7,500 per Plaintiff totaling $15,000, Settlement Administration fees of up to $45,000,

and the PAGA Penalty of $50,000 ($37,500 to the LWDA and $12,500 to the Aggrieved
Employees).

By way of this Motion, Plaintiffs seek an order for: (1) preliminary approval of the
proposed settlement, including terms establishing a procedure for class members to
submit claims, and/or consent to participate in the collective action proceeds, as well as to
object or opt-out; (2) preliminary certification of the proposed class for settlement
purposes only; (3) preliminary certification of an FLSA collective action for purposes of
notice; (4) approval of the form and method of providing class-wide notice; (5)
appointment of Harris & Ruble as counsel for the Class Members and collective action
("class counsel"); (6) preliminary appointment of the class representatives and approval
of incentive and/or enhancement awards for them; and (7) preliminary approval of an
application for attorneys' fees and costs.

The September 4, 2023, Settlement Agreement is attached as Exhibit 1 to the
Harris Declaration, filed herewith.  Unless otherwise noted, capitalized terms herein have
the meanings set forth in the Settlement Agreement. The Class Notice is attached as
Exhibit 2 to the Harris Declaration.

The Motion will be made and based upon this Notice of Motion; the Memorandum
of Points and Authorities appended hereto; the Declarations filed herewith; all of the
pleadings, papers, and documents contained in the file of the within actions; and such
further evidence and argument as may be presented at or before the hearing on the
Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-
3 which took place on July 27, 2023 and on subsequent dates thereafter.

//

//

//

//

//

PLS.' NOT. OF MOT. AND MOT. FOR PRELIMINARY APPROVAL; MEM. OF P. & A. IN SUPP. THEREOF

1    As Plaintiffs received a copy of a fully executed long form agreement after the

2    close of business on Friday, September 4, 2023, Plaintiffs are filing this Motion for

3    Preliminary Approval over the holiday weekend.

4    Dated:  September 4, 2023                    HARRIS & RUBLE

5

6                                                         */s/ Alan Harris*
                                                         Alan Harris
7                                                        *Attorneys for Plaintiffs*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLS.' NOT. OF MOT. AND MOT. FOR PRELIMINARY APPROVAL; MEM. OF P. & A. IN SUPP. THEREOF

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................1

II.     PROCEDURAL HISTORY AND SUMMARY OF SETTLEMENT..........2

        A.     Procedural History.........................................................................2

        B.     Settlement Terms............................................................................3

III.    CONDITIONAL CERTIFICATION IS APPROPRIATE............................7

        A.     Class Certification Is Warranted ..................................................8

        B.     The Settlement Meets The Requirements For Preliminary
               Approval......................................................................................15

        C.     Plaintiffs Satisfy The FLSA Collective Action Certification
               Standard.......................................................................................22

IV.     CONCLUSION.........................................................................................23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Abdullah v. U.S. Sec. Associates, Inc.,
  731 F.3d 952 (9th Cir. 2013) ........................................................................ 9

Allen v. Bedolla,
  787 F.3d 1218 (9th Cir. 2015) ................................................................. 7, 19

Amchem Prods., Inc. v. Windsor,
  521 U.S. 591 (1997) .......................................................................... 8, 12, 13

Amgen Inc. v. Connecticut Ret. Plans & Trust Funds,
  568 U.S. 455 .............................................................................................. 12-13

Apodaca v. Costco Wholesale,
  No. CV12-5664 DSF, 2014 WL 2533427 (C.D. Cal. June 5, 2014) ........... 20

Armstrong v. Davis,
  275 F.3d 849 (9th Cir. 2001) ...................................................................... 10

Arnold v. United Artists Theatre Circuit, Inc.,
  158 F.R.D. 439 (N.D. Cal. 1994) ................................................................ 11

Beaver v. Tarsadia Hotels,
  No. 11-cv-01842-GPC-KSC, 2017 WL 4310707 (S.D. Cal. Sept. 28, 2017) .............. 6

Bedolla v. Allen,
  736 Fed. Appx. 614 (9th Cir. 2018) ............................................................ 19

Bellinghausen v. Tractor Supply Co.,
  306 F.R.D. 245 (N.D. Cal. 2015) ................................................................ 19

Brinker Rest. Corp. v. Superior Court,
  53 Cal. 4th 1004 (2012) ................................................................................ 18

California Rural Legal Assistance v. Legal Servs. Corp.,
  917 F.2d 1171 (9th Cir. 1990) ............................................................... 11, 12

Carrington v. Starbucks,
  30 Cal. App. 5th 504 (2018) ........................................................................ 20

Daar v. Yellow Cab Co.,
  67 Cal.2d 695 (1967) .................................................................................... 14

Dalton v. Lee Publ'ns,
  2011 WL 1045107 (S.D. Cal. Mar. 22, 2011) ............................................ 20

Diesel" Mktg., Sales Practices & Prods. Liab. Litig.,
  2017 WL 672727 (N.D. Cal. Feb. 16, 2017) ................................................. 7

Dunleavy v. Nadler,
  213 F.3d 454 .................................................................... 7, 16, 21, 22

Ellis v. Costco Wholesale Corp.,
  657 F.3d 970, 985 (9th Cir. 2011) ............................................................... 14

PLS.' NOT. OF MOT. AND MOT. FOR PRELIMINARY APPROVAL; MEM. OF P. & A. IN SUPP. THEREOF

Gen. Tel. Co. of the Southwest v. Falcon,
   457 U.S. 147 (1982) ............................................................................... 11, 12
Gentry v. Superior Court,
   42 Cal.4th 443 (2007) ................................................................................... 13
Hanlon v. Chrysler Corp.,
   150 F.3d 1011 (9th Cir. 1998) ............................................. 7, 8, 9, 10, 11, 12
Hartman v. Duffey,
   19 F.3d 1459–72 (D.C. Cir. 1994) ............................................................... 11
Hoffman v. Construction Protective Servs.,
   293 Fed. App'x 462 (9th Cir. 2008) ............................................................. 20
In re Bluetooth Headset Prods. Liability Litig.,
   654 F.3d 935 (9th Cir. 2011) ................................................................. 6-7, 7
In re Cooper Companies Inc. Sec. Litig.,
   254 F.R.D. 628 (C.D. Cal. 2009) ................................................................. 10
In re Heritage Bond Litig., No. 02-ML-1475-DT
   005 U.S. Dist. LEXIS 13627 (C.D. Cal. Jun. 10, 2005) ............................. 20
In re High-Tech Emp. Antitrust Litig.,
   2013 WL 6328811 (N.D. Cal. Oct. 30, 2013) ............................................. 15
In re Hyundai & Kia Fuel Econ. Litig.,
   926 F.3d 539 (9th Cir. 2019) (en banc) ..................................................... 8, 9
Mazur v. eBay Inc.,
   257 F.R.D. 563 (N.D. Cal. 2009) .................................................................. 9
Johnson v. Quantum Learning Network, Inc.,
   2016 WL 4529607 (N.D. Cal. Aug. 30, 2016) ............................................ 15
Khanna v. Inter-Con Sec. Sys., Inc.,
   2012 WL 4465558 at *9 (E.D. Cal. Sept. 25, 2012) .................................. 23
Labbate-D'Alauro v. GC Servs. Ltd. P'ship,
   168 F.R.D. 451 (E.D.N.Y. 1996) .................................................................. 8
Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,
   244 F.3d 1152 (9th Cir. 2001) ..................................................................... 14
Lusby v. Gamestop Inc.,
   297 F.R.D. 400 (N.D. Cal. 2013) ................................................................ 15
Magadia v. Wal-Mart Assocs.,
   999 F.3d 668 ................................................................................................. 20
Mazza v. Am. Honda Motor Co.,
   666 F.3d 581 (9th Cir. 2012) ....................................................................... 10
McGrath v. Wyndham Resort Dev. Corp.,
   No. 15cv1631 JM (KSC), 2018 WL 637858 (S.D. Cal. Jan. 30, 2018) ....... 6
Miller v. CEVA Logistics USA,
   2015 WL 729638 (E.D. Cal, Feb. 19, 2015) .............................................. 20
Mitchell v. Acosta Sales, LLC,
   841 F. Supp. 2d 1105 (C.D. Cal. 2011) ...................................................... 22

*Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles,*
  186 Cal. App. 4th 399 (2010) ................................................................ 21
*Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc.,*
  221 F.R.D. 523 (C.D. Cal. 2004) ........................................................... 17
*Officers for Justice v. Civil Serv. Comm.,*
  688 F.2d 615–25 (9th Cir. 1982) ............................................................. 7
*Ordonez v. Radio Shack, Inc.,*
  2013 WL 210223 at *7 (C.D. Cal. filed Jan. 17, 2013) ........................ 18
*Richardson v. Interstate Hotels & Resorts, Inc.*
  2019 WL 803746 at *3 (N.D. Cal. Feb 21, 2019) ................................. 20
*Rodriguez v. Hayes,*
  591 F.3d 1105 (9th Cir. 2010) ............................................................... 14
*Rodriguez v. West Publ'g Corp.,*
  2007 WL 2827379 (C.D. Cal. filed Sept. 10, 2007) ................. 17-18, 18, 22
*Rodriguez v. W. Publ'g Corp.*
  563 F.3d 948 (9th Cir. 2009) ................................................... 2, 5, 6, 20
*Sibert v. TV Magic, Inc.,*
  2012 U.S. Dist. LEXIS 118245 (C.D. Cal. filed Aug. 21, 2012) ............. 9
*Spann v. J.C. Penney Corp.,*
  211 F. Supp. 3d 1244 (C.D. Cal. 2016) ................................................... 6
*Staton v. Boeing Co.,*
  327 F.3d 938 (9th Cir. 2003) ........................................................ 7, 8, 11
*Stetson v. Grissom,*
  821 F.3d 1157 (9th Cir. 2016) ................................................................. 6
*Taylor v. Union Carbide Corp.,*
  93 F.R.D. 1 (S.D. W. Va. 1980) ............................................................ 11
*Thompson v. Costco Wholesale Corp.,*
  2017 WL 697895 (S.D. Cal. 2017) ........................................................ 22
*Wal-Mart Stores, Inc.,*
  564 U.S. 338 ........................................................................................... 10
*Wehner v. Syntex Corp.,*
  117 F.R.D. 641 (N.D. Cal. 1987) ................................................... 11, 12
*Wofford v. Safeway Stores, Inc.,*
  78 F.R.D. 460 (N.D. Cal. 1978) ............................................................ 11
*Yokoyama v. Midland Nat'l Life Ins. Co.,*
  594 F.3d 1087 (9th Cir. 2010) ............................................................... 13

**Statutes**

29 U.S.C. § 206 ...................................................................................... 19
29 U.S.C. § 207 ...................................................................................... 19
Cal. Bus. & Prof. Code § 17200 ................................................... x, 3, 4, 5

1

Cal. Lab. Code § 201.3 ........................................................................ 6, 17
Cal. Lab. Code § 203 ............................................................................... 19
Cal. Lab. Code § 212 ............................................................................... 19
Cal. Lab. Code § 221 ............................................................................... 19
Cal. Lab. Code § 223 ............................................................................... 19
Cal. Lab. Code § 226 ........................................................................ 3, 6, 10
Cal. Lab. Code § 510 ............................................................................... 19
Cal. Lab. Code § 512 ............................................................................... 18
Cal. Lab. Code § 1194 ......................................................................... 3, 19
California Business and Professions Code § 17200, et seq. ...................... 19
California Labor Code § 2699 .................................................................. 19

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiffs and Defendants Smuggler, LLC (former known as Smuggler, Inc.
hereinafter "SMI"), Rare Bird Holdings, Inc. ("RBHI"), Brian Carmody ("Carmody");
Patrick Milling-Smith ("Milling-Smith"); Division7, LLC ("DSLLC") have reached a
settlement ("Settlement") of the collective action, class-wide and representative claims
alleged in this case.[1]  The fully executed Settlement Agreement is attached as Exhibit 1 to
the Declaration of Alan Harris (hereinafter "Settlement Agreement").  The Total
Settlement Amount is $1,3500,000.  Settlement at ¶ C. 15. (a).  Defendants will make an
additional payment, outside of and in addition to the Total Settlement Amount, for
payroll taxes. Id. at ¶ C. 15. (c).  The approximate gross recovery for each of the class
members, assuming one hundred percent participation is approximately $176.47
(=$1,350,000 [settlement amount]/7,650 [number of workers]).  See id. at ¶ D. 31. The
Settlement also provides that $50,000 of the Total Settlement Amount shall be allocated
for payment of PAGA penalties.  Id. at ¶ C. 15. (d).  Therefore, of the $50,000 PAGA
Penalty allocation, 75% ($37,500) shall be paid to the Labor & Workforce Development
Agency ("LWDA") and 25% ($12,500) shall be allocated to participating class members.
Assuming all requested payments are approved by the Court, the estimated Net
Settlement Proceeds are $755,000.[2]

As detailed below, and in the Harris Declaration, the Settlement provides
substantial relief to participating Class Members for their claims.  The parties have
engaged in investigation of the facts at issue, and exchange of extensive documents and

---

[1] Unless otherwise noted, capitalized terms herein have the meanings set forth in the Joint
Stipulation of Class Action Settlement Agreement and Release (the "Settlement" or
"Settlement Agreement").  The Settlement is **Exhibit 1** to the Harris Decl. filed herewith.
The Harris Declaration includes extensive analysis of the relationship between the total
potential recovery in this case and the amounts offered in the Settlement.
[2] The estimated claims administration cost is up to $45,000, Harris Decl. ¶ 54, and the
Settlement provides that Plaintiffs may apply to the Court for an award of attorneys' fees
of up to 33 1/3% of the Settlement Amount ($450,000) and costs not to exceed $35,000.
Plaintiffs will also seek enhancement awards totaling $15,000 for the two proposed class
representatives.

1  data that was analyzed by Plaintiff's expert, all of which allowed the Parties to fully

2  assess the value of the claims involved.  Harris Decl. ¶¶ 15-18, 24-34.  This Agreement

3  comes after motion practice, many conferences of counsel, and intense settlement

4  negotiations, including a 12-hour day of mediation with Mediator, Ms. Ngo-Bonnici.  Id.

5  ¶¶ 14, 25-26.

6       Formal mediation and investigation strongly supports approval of this

7  Settlement.  See Rodriguez v. W. Publ'g Corp., 563 F3d 948, 965 (9th Cir. 2009) ("We

8  put a good deal of stock in the product of an arms-length, non-collusive, negotiated

9  resolution, and have never prescribed a particular formula by which that outcome must be

10 tested.") (citations omitted); In re Zynga Inc. Secs. Litig., 2015 WL 6471171, at *9 (N.D.

11 Cal. Oct. 27, 2015) (holding that the parties' use of mediator and fact that significant

12 discovery had been conducted "support the conclusion that the Plaintiff was appropriately

13 informed in negotiating a settlement"); Harris v. Vector Mktg. Corp., No. C-08-5198

14 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (noting that the parties' use of

15 a mediator "suggests that the parties reached the settlement in a procedurally sound

16 manner and that it was not the result of collusion or bad faith.")  Plaintiffs now

17 respectfully move for preliminary approval of the Settlement and conditional certification

18 of the Class Members.

19 **II.    PROCEDURAL HISTORY AND SUMMARY OF SETTLEMENT**

20      **A. Procedural History**

21      This is a PAGA law enforcement action, class action and Fair Labor Standards Act

22 collective action, seeking unpaid wages, damages, penalties and attorneys' fees and costs,

23 against Defendants.[3]  Plaintiffs' operative July 11, 2023, First Amended Complaint

24 ("FAC") [ECF Doc. 24] was filed after the Court's ruling on Defendant's Rule 12(f)

25

26 [3] On January 13, 2023, Plaintiffs provided statutory notice to the LWDA and to
   Defendants of the claims set forth in this complaint.  The First Amended Complaint and
27 proposed settlement has been uploaded to the LWDA's website, as reflected in its
   database. Harris Decl. Ex. 3.
28

Motion to Strike.  The FAC alleges the following claims against Defendants on a representative basis:  (1) failure to timely pay all final wages at termination of employment, (2) failure to pay minimum wages in violation of Code § 1194 and the IWC Wage Order; (3) failure to provide proper meal breaks; (4) failure to provide proper rest breaks; (5) failure to provide wage statements that supplied all of the information required by Code § 226(a); (6) violation of Cal. Bus. & Prof. Code § 17200; (7) failure to reimburse all necessary business expenses; (8) claim for PAGA penalties; and (9) failure to pay minimum wages under the Fair Labor Standards Act.[4]

On July 27, 2023, the parties attended a private mediation with Ms. Monique Ngo-Bonnici. After an almost 12-hour day of negotiations, the Parties accepted a mediator's proposal.  Harris Decl. ¶¶ 14, 25-26.  That agreement is memorialized in the September 1, 2023, Settlement Agreement, which is now before the Court for preliminary approval. Harris Decl., Ex. 1.

Plaintiffs and their counsel have concluded that the Settlement reflected herein is fair, reasonable, and in the best interests of the Class Members and respectfully request that the Settlement be approved.

## B. Settlement Terms

### 1. The Total Settlement Amount and Net Settlement Proceeds

Again, the Total Settlement Amount of the Settlement Agreement is $1,350,000. Settlement Agreement ¶ C. 15. (a).  The settlement amount is non-reversionary and not "claims made." Id.  Subject to this Court's approval, the Total Settlement Amount will be used to pay the costs of delivering the Class Notice to the Class Members, pay attorney's fees and costs to Class Counsel, and Enhancement Awards to Plaintiffs and pay the PAGA claim.  Id. ¶ C. 15. (b).  The remainder of funds after accounting for the above payments will constitute the Net Settlement Proceeds ("NSP").

The NSP will be distributed to the Class Members who do not "opt out" of the

---

[4] The tenth and eleventh causes of action are brought by Plaintiffs only against Defendants for failure to provide requested employment and personnel records.

settlement on an equal basis.  Id.  Taking into account the requested enhancement awards to Plaintiffs (a total of $15,000), id. ¶ C. 15. (c), the maximum amount of attorney's fees and costs permitted to be awarded under the Settlement ($450,000 and $35,000), id. ¶ C. 15. (f), and the estimated costs of claims administration ($45,000), id. ¶ C. 15. (g), **the NSP is estimated to be, at minimum, $755,000** ($1,350,000 Total Settlement Amount - $15,000 enhancement awards - $450,000 attorney's fees - $35,000 attorney's costs – $45,000 claims administration costs).  The $50,000 allocated to the PAGA claim is 6.6% of the NSP.

### 2. Allocation of Funds

Class Members will share equally in the Net Settlement Proceeds.  Id. at ¶ C. 15. (b).  That is, each Class Member who does not Opt Out will receive the same amount from the NSP and is not based on workweeks.

This is a settlement that involves workers in the television commercial segment of the motion picture industry, which means that Class Members work for very short periods – one to four days per commercial --  and have relatively large, average daily rates, including routine overtime and double time wages.  In other industries, employees work continuously for weeks, months, or years for a single employer such that their claims for meal and rest penalties, and wage statement penalties are very large, and increase along with tenure with an employer, subject to the statute of limitations.  Their late final pay penalties are relatively small in comparison with other penalties and damages, or non-existent when they are still employed by the same employer. Settlements in such cases, focused on the number of weeks worked, appropriately reflect whether the individual employee was subject to few or many Labor Code violations.  Harris Decl. ¶ 29.

Here, all class members have experienced termination, many or most having been paid late with all having claims for additional wages under Naranjo, wages owing for failure to provide sufficient rest periods and meal breaks, wages which might be deemed to trigger  late pay claims for all.  Under the circumstances, as a negotiated point, the Parties agreed that the most fair and efficient manner in which to divide the recovery is to

do so equally, avoiding unnecessarily costly further allocation debates.  Similarly, for the PAGA amount, the Aggrieved Employees will share the $12,500 equally.  Id. ¶ 30.

The estimated gross recovery of $176.47 and a net recovery of $98.69 for each Class Member is fair.  Id. ¶ 27.  In a case seeking recovery of unpaid wages, it is appropriate to substantially discount penalties and civil penalties, or to entirely exclude them from the analysis, as in Rodriguez v. West Publ'g Corp., 563 F.3d 948, 964 (9th Cir. 2009).

### 3.  Settlement Administration

Plaintiffs sought bids for settlement administration from qualified companies and request that the Court appoint Phoenix Settlement Administrators to act as the settlement administrator to perform notification services and claims administration pursuant to the terms of the Settlement Agreement.  Id. ¶ 54.  The deadline for claims, objections, and opt-outs will be forty five (45) days after class notice is sent, a notice designed to provide the best notice practicable.  Settlement Agreement ¶ E. 25.  If more than 10% of the Class Members opt-out, Defendants have the right to void this agreement and all rights and obligations contained therein.  In such case the Parties shall return to their respective previous positions prior to entry of this Agreement and Defendants agrees to bear all settlement administration costs incurred up to the date of nullification.  Id. ¶ E. 27.

### 4.  Enhancement Awards and Reimbursement Fees and Costs

Plaintiffs will petition the court for class representative enhancement awards (not to exceed $7,500 each. Id. ¶ C. 15 (e).  According to the Ninth Circuit, "[i]ncentive awards are fairly typical in class action cases" and "are intended to compensate class representatives for work done on behalf of [a] class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  Rodriguez v. West Publ'g Corp., 563 F.3d at 958–59 (emphasis removed), vacated on other grounds, 688 F.3d 645, 660 (9th Cir. 2012).  The incentive awards requested here are reasonable in light of the work pursuing this action with counsel.  The declarations of Plaintiffs submitted herewith

1    detail their efforts in connection with this case.

2         Defendants have also agreed not to oppose Class Counsel's application for an

3    award of attorney's fees and reimbursement of actual litigation expenses.  Pursuant to the

4    terms of the Settlement Agreement, Class Counsel intend to apply for an award of

5    attorney's fees in an amount not to exceed $450,000 to Class Counsel, as well as an

6    award of actual costs of no more than $35,000 as awarded by the Court.  Id. ¶ C. 15 (f).

7    Plaintiffs' requested fee should be preliminarily approved.  This litigation and the

8    culminating settlement has resulted in a substantial cash recovery.  Indeed, since the

9    underlying claims at issue here are largely state-law claims, "California law governs this

10   fee application because where state law claims predominate, state law applies to

11   determine the right to fees and the method of calculating them"—and the federal 25%

12   "benchmark" should not apply here since, "[u]nder the percentage method, California has

13   recognized that most fee awards based on either a lodestar or percentage calculation are

14   33 percent."  Beaver v. Tarsadia Hotels, No. 11-cv-01842-GPC-KSC, 2017 WL 4310707,

15   at *9 (S.D. Cal. Sept. 28, 2017).[5]  A court overseeing a class-wide settlement in federal

16   actions, such as under the FLSA, "has discretion to apply either a lodestar method or the

17   percentage-of-the-fund method in calculating a fee award."  Stetson v. Grissom, 821 F.3d

18   1157, 1165 (9th Cir. 2016) (internal quotation marks omitted).  Regardless, though, of

19   which method is selected, or whether state or federal law applies, courts in the Ninth

20   Circuit should "cross-check[] their calculations against [the non-selected] method" to

21   assure themselves that the calculated fee is reasonable.  In re Bluetooth Headset Prods.

22

23   [5] See also McGrath v. Wyndham Resort Dev. Corp., No. 15cv1631 JM (KSC), No.
     15cv1631 JM (KSC), 2018 WL 637858, at *7–8 (S.D. Cal. Jan. 30, 2018) (explaining
24   that, "[u]nder California law, which applies here, attorneys' fees in class action cases may
     be calculated in one of two ways:  the percentage method . . . or the lodestar method,"
25   and that the typical fee award under California law is "one-third of the common fund");
     Spann v. J.C. Penney Corp., 211 F. Supp. 3d 1244, 1262 (C.D. Cal. 2016) (stating that,
26   "[i]n diversity actions such as this one, the Ninth Circuit applies state law to determine
     the right to fees and the method for calculating them," and that "'[e]mpirical studies show
27   that, regardless whether the percentage method or the lodestar method is used, fee awards
     in class actions [subject to California law] average around one-third of the recovery'")
28   (quoting Chavez v. Netflix, Inc., 162 Cal. App. 4th 43, 66 n.11 (2008)).

1  Liability Litig., 654 F.3d 935, 944 (9th Cir. 2011).  Accordingly, "even though the

2  lodestar method may be a perfectly appropriate method of fee calculation. . . courts [are]

3  to guard against an unreasonable result by cross-checking their calculations against a

4  second method." Id.

5      In any event, the Class Members will be given an opportunity to object to Class

6  Counsel's requested attorney's fees, and the Court will have an opportunity to address the

7  fee award after Class Counsel have filed the necessary fee petition.

8  **III.    CONDITIONAL CERTIFICATION IS APPROPRIATE**

9      Under Ninth Circuit precedent, there is "a strong judicial policy that favors

10  settlements, particularly where complex class action litigation is concerned." Allen v.

11  Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015) (internal quotation marks omitted).  Federal

12  Rule of Civil Procedure 23(e) requires district court approval of class action settlements.

13  "[S]ettlement class actions present unique due process concerns for absent class

14  members." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998) *overruled on*

15  *other grounds by* Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011).  Concerns about

16  the rights of absent Class Members can be dispelled by the Court's review of the

17  Settlement Agreement and by the procedural protections provided by Rule 23.  Officers

18  for Justice v. Civil Serv. Comm., 688 F.2d 615, 624–25 (9th Cir. 1982), cert. denied, 459

19  U.S. 1217 (1983).  A trial court has wide discretion in certifying a class for settlement

20  purposes and will be reversed "'only upon a strong showing that [its] decision was a clear

21  abuse of discretion.'" Dunleavy v. Nadler, 213 F.3d 454, 461 (quoting Linney v. Cellular

22  Alaska P'ship, 151 F.3d 1234, 1238 (9th Cir. 1998)).  In instances where parties arrive at

23  a settlement before class certification, "courts must peruse the proposed compromise to

24  ratify both the propriety of the certification and the fairness of the settlement." Staton v.

25  Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

26      Preliminary approval of class action settlements involves a two-step inquiry.  In re

27  Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig., 2017 WL

28  672727, at *12 (N.D. Cal. Feb. 16, 2017).  In the first step, courts decide if a class exists.

1    Staton, 327 F.3d at 952.  "Such attention is of vital importance, for a court asked to

2    certify a settlement class will lack the opportunity, present when a case is litigated, to

3    adjust the class, informed by the proceedings as they unfold."  Amchem Prods., Inc. v.

4    Windsor, 521 U.S. 591, 620 (1997).  In the second step, courts consider "whether a

5    proposed settlement is fundamentally fair, adequate, and reasonable."  Hanlon, 150 F.3d

6    at 1026.  If the parties settle before class certification, the Ninth Circuit requires "a more

7    probing inquiry than may normally be required under Rule 23(e)."  Id.  During the

8    preliminary approval stage, courts "determine whether the settlement falls 'within the

9    range of possible approval.'"  Booth v. Strategic Realty Tr., Inc., 2015 WL 3957746, at

10   *6 *N.D. Cal. Jun. 28, 2015) quoting In re Tableware Antitrust Litig., 484 F.Supp.2d

11   1078 (N.D. Cal. 2007)).  Courts examine "the settlement taken as a whole, rather than the

12   individual component parts. . . for overall fairness."  Hanlon, 150 F.3d at 1026.

13        **A. Class Certification Is Warranted**

14        Class actions are favored, and Rule 23 is to be given a broad interpretation in favor

15   of maintaining class actions.  Labbate-D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D.

16   451, 454 (E.D.N.Y. 1996).  Rule 23 requires the party seeking certification to satisfy all

17   four requirements of Rule 23(a)[7] and at least one of the subparagraphs of Rule 23(b).

18   Here, Plaintiff seeks certification under Rule 23(b)(3).  As explained in Espinosa v.

19   Ahearn (In re Hyundai & Kia Fuel Econ. Litig., 926 F.3d 539 (9th Cir. 2019) (en banc):

20            The criteria for class certification are applied differently in litigation classes

21            and settlement classes.  In deciding whether to certify a litigation class, a

22            district court must be concerned with manageability at trial.  However, such

23            manageability is not a concern in certifying a settlement class where, by

---

[7] Rule 23(a) contains the following certification requirements:

(i)      The class is so numerous that joinder of all members is impracticable;
(ii)     There are questions of law and fact common to the class;
(iii)    The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(iv)     The representative parties will fairly and adequately protect the interests of the class.
Fed. R. Civ. P. 23(a).

1    definition, there will be no trial.

2    In re Hyundai, 926 F.3d at 556-57.

3           **1. Numerosity**

4         Here, the numerosity requirement is met.  Again, there are approximately 7,650

5    Class Members.[8]  Harris Decl. ¶ 27.  Given that "courts will typically find the numerosity

6    requirement satisfied when a class includes 40 or more members," Sibert v. TV Magic,

7    Inc., 2012 U.S. Dist. LEXIS 118245 (C.D. Cal. filed Aug. 21, 2012) (citing Rannis v.

8    Recchia, 380 Fed. Appx. 646, 651 (9th Cir. 2010), and given that common sense

9    indicates that joinder of all Class Members would be "impracticable," the Class is

10    sufficiently numerous to justify certification.

11           **2. Commonality**

12         "[C]ommonality requires that the class members' claims 'depend upon a common

13    contention' such that 'determination of its truth or falsity will resolve an issue that is

14    central to the validity of each claim in one stroke.'" Abdullah v. U.S. Sec. Associates,

15    Inc., 731 F.3d 952, 957 (9th Cir. 2013) cert. denied, 135 S. Ct. 53, 190 L. Ed. 2d 30

16    (2014). "This does not, however, mean that *every* question of law or fact must be

17    common to the class; all that Rule 23(a)(2) requires is "a single *significant* question of

18    law or fact." Id.  Rule 23(a)(2), in other words, is construed "permissively," with the

19    analysis thereunder proceeding far less rigorously than that under Rule 23(b)(3),

20    discussed *infra*. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998) Compare

21    Fed. R. Civ. Proc. 23(b)(3) (requiring that common questions of law or fact

22    "predominate" in class actions maintained under this subsection) with Fed. R. Civ. Proc.

23    23(a)(2) (not including "predominate" or similar language in describing the general

24

25    [8] "As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." Mazur v. eBay Inc., 257 F.R.D. 563, 567 (N.D. Cal. 2009). "A class definition
26    should be precise, objective and presently ascertainable." Id. (citing Rodriguez v. Gates,
27    2002 WL 1162675, *8 (C.D. Cal. 2002).  Here, Defendant maintain records identifying
28    each of the class members.

PLS.' NOT. OF MOT. AND MOT. FOR PRELIMINARY APPROVAL; MEM. OF P. & A. IN SUPP. THEREOF

commonality requirement). Accordingly, it is sufficient for class members to share legal issues but divergent facts or, similarly, to share a common core of facts but to base their claims for relief on different legal theories. Hanlon, 150 F.3d at 1019. In re Cooper Companies Inc. Sec. Litig., 254 F.R.D. 628, 634 (C.D. Cal. 2009) ("[A] few factual variations among the class grievances will not defeat commonality so long as class members' claims arise from 'shared legal issues' or 'a common core of salient facts'") (quoting Staton v. Boeing Co., 327 F.3d 938, 953 (9th Cir. 2003)). In point of fact, the Ninth Circuit considers the requirements for finding commonality under Rule 23(a)(2) to be "minimal," id. at l020, and for the party to have only "a single *significant* question of law or fact." Mazza v. Am. Honda Motor Co., 666 F.3d 581, 589 (9th Cir. 2012). See also Wal-Mart Stores, Inc., 564 U.S. 338, 359 ("We quite agree that for purposes of Rule 23(a)(2) "'even a single [common] question'" will do.") (brackets in original).

Commonality is readily satisfied where a "lawsuit challenges a system-wide practice or policy that affects all putative class members." Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir. 2001) abrogated on other grounds by Johnson v. California, 543 U.S. 499, 504-05 (2005). Such system-wide policies and practices are present in this action for the Class Members, including: (i) whether the form of the wage statements issued to all Class Members complied with Code § 226(a); (ii) whether Defendant failed to provide Class Members who were allegedly required to have radios operating at all times with proper meal and rest breaks; and (iii) whether systematic payroll practices and/or the failure to pay timely meal and rest break premiums resulted in the late payment of final wages to all Class Members. Harris Decl. ¶ 30, 34-40. Whether these common matters violate the law can be determined in a single action for all employees.

### 3. Typicality

Rule 23(a)(3) requires that "the claims . . . of the representative part[y be] typical of the claims . . . of the class." Fed. R. Civ. Proc. 23(a)(3). The Ninth Circuit also interprets this requirement permissively. Hanlon, 150 F.3d at 1020. Typicality requires that the named plaintiffs be members of the classes that he or she seek to represent and

that he or she "possess the same interest and suffer the same injury" as class members.

<u>Gen. Tel. Co. of the Southwest v. Falcon</u>, 457 U.S. 147, 156 (1982).  The named

plaintiff's claims need not be identical to the claims of the class; instead, the claims need

only be "reasonably co-extensive with those of absent class members."  <u>Hanlon</u>, 150 F.3d

at 1020.  It is sufficient for the plaintiff's claims to "arise from the same remedial and

legal theories" as the class' claims.  <u>Arnold v. United Artists Theatre Circuit, Inc.</u>, 158

F.R.D. 439, 449 (N.D. Cal. 1994); <u>California Rural Legal Assistance v. Legal Servs.</u>

<u>Corp.</u>, 917 F.2d 1171, 1175 (9th Cir. 1990) (explaining that class representatives and

members of the class need only "share a common issue of law or fact").  For this reason,

Rule 23(a)(3) does not require a class representative for each job category or location that

may be included in a class.  <u>Staton</u>, 327 F.3d at 957 (rejecting the defendant's argument

that typicality requires plaintiffs to "provide clear documentation that each job category

had a class representative"); <u>Taylor v. Union Carbide Corp.</u>, 93 F.R.D. 1, 6 (S.D. W. Va.

1980); <u>Hartman v. Duffey</u>, 19 F.3d 1459, 1471–72 (D.C. Cir. 1994). <u>Cf. Wofford v.</u>

<u>Safeway Stores, Inc.</u>, 78 F.R.D. 460, 488 (N.D. Cal. 1978) ("Factual variations are not

fatal to a proposed class when the claims arise out of the same remedial and legal

theory."); <u>Wehner v. Syntex Corp.</u>, 117 F.R.D. 641, 644 (N.D. Cal. 1987) ("Factual

differences are acceptable provided the claim arises from the same event or course of

conduct and is based on the same legal theory.").  All that is required is that the

representative —the named plaintiff—be similarly situated so that he or she will have the

incentive or motive to litigate on behalf of all class members.

The only claims that the proposed Class Representatives seek to represent are the

claims of others who, like them, were subject to the alleged violations in this case.  At

least one or more of the Plaintiffs suffered each violation and are members of the

proposed Class.[9]

Common issues permeate this action.  The U.S. Supreme Court has stated that Rule

---

[9] Plaintiff Costa worked for SMI and Plaintiff Payne worked for DSLLC, a division of
SMI.  Both are Aggrieved Employees.

23(a)(3)'s typicality and commonality requirements "tend to merge," and a finding of commonality ordinarily supports a finding of typicality. Gen. Tel. Co. of the Sw., 457 U.S. at 157 n.13; Wehner, 117 F.R.D. at 644 (observing a "necessary overlap of the provisions of Rule 23"); Cal. Rural Legal Assistance, 917 F.2d at 1175 ("Fed. R. Civ. P. 23 . . . does not require the named plaintiffs to be identically situated with all other class members. It is enough to share a 'common issue of law or fact.'") (internal citations omitted). Because Plaintiffs possess the same interests, have suffered the same injury, and allege identical violations to other Class Members, typicality exists.

### 4. Predominance and Superiority

In addition to the above-described four requirements, this case must also meet one of the non-exclusive factors in Rule 23(b). Rule 23(b) authorizes class certification if a court determines that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. Proc. 23(b)(3). The predominance inquiry is whether proposed classes are sufficiently cohesive to warrant adjudication by representation. Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997). The inquiry "presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2)," and focuses on whether the "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." If the question or questions are significant for the proposed class, they predominate and, "there is clear justification for handling the dispute on a representative rather than on an individual basis." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) overruled on other grounds (quoting 7A Charles Alan Wright et al., Federal Practice & Procedure § 1777 (2d ed. 1986)). While the commonality inquiry asks whether the class shares issues capable of resolution through common proof, the predominance inquiry asks whether resolving those common issues is apt to drive the case's resolution, or instead, whether individual inquiries are going to overwhelm common questions. Amgen

1    Inc. v. Connecticut Ret. Plans & Trust Funds, 568 U.S. 455; 469 (2013).  Here, there is

2    nothing to indicate that individual inquiries could "overwhelm" the common questions.

3           The superiority requirement ensures that classes will only be certified under Rule

4    23(b)(3) if they will "achieve economies of time, effort, and expense, and promote . . .

5    uniformity of decision as to persons similarly situated, without sacrificing procedural

6    fairness or bringing about other undesirable results."  Amchem, 521 U.S. at 615 (internal

7    quotations and citation omitted).  With respect to superiority, there can be no question but

8    that resolution of this will achieve economies of time and assure uniformity of decision.

9           Plaintiffs contend that the core common questions in this case—the lawfulness of

10   Defendants' policies and practices predominate over any differences with respect to

11   implementation of those policies and practices.  Harris Decl. ¶ 34.  As such, this Court

12   should conclude that common questions of law and fact predominate.  As noted with

13   respect to the commonality requirement, a central issue in this case is the legality of

14   Defendants' policies.  Notably, individual determinations on damages do not defeat class

15   certification.  See Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1089 (9th

16   Cir. 2010) (stating that "[t]he potential existence of individualized damage assessments,

17   however, does not detract from the action's suitability for class certification," and

18   explaining "that '[t]he amount of damages is invariably an individual question and does

19   not defeat class action treatment'").  There is no issue regarding procedural unfairness,

20   when the alternative to class-wide settlement is the near certainty that the overwhelming

21   majority of the workers will never receive any recovery, at all.

22          A class action is also superior where individuals may forgo pursuing otherwise-

23   meritorious claims due to the fear of retaliation.  This chilling effect is uniquely present

24   in employment actions. In Gentry v. Superior Court, 42 Cal.4th 443 (2007), the

25   California Supreme Court recognized that "retaining one's employment while bringing

26   formal legal action against one's employer is not a viable option for many employees."

27   Id., at 459.  "[F]ederal courts have widely recognized that fear of retaliation for

28   individual suits against an employer is justification for class certification in the arena of

employment litigation, even when it was otherwise questionable that the numerosity requirement of Rule 23 were satisfied." Id., at 460. "[F]ear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions." Id., at 460. Finally, the wages due to any one employee may well be insufficient to attract counsel who are ready, willing, and able to prosecute individual cases. The blessing of class and collective actions are that they incentivize counsel to litigate such claims that might otherwise be abandoned. This is particularly important in actions to vindicate wage and hour rights. The class procedure may be the only method by which these claims can be resolved. Indeed, in such a case, recovery by any individual is unlikely. "[A]bsent a class suit, defendant will retain the benefits from its alleged wrongs. A procedure that would permit the allegedly injured parties to recover . . . is preferred over the forgoing." Daar v. Yellow Cab Co., 67 Cal.2d 695, 715 (1967).

### 5. Adequacy

Representative parties must also fairly and adequately protect the interests of the class. See Fed. R. Civ. P. 23(a)(4). Generally speaking, "[w]hether the class representative[] satisf[ies] the adequacy requirement depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." Rodriguez v. Hayes, 591 F.3d 1105, 1125 (9th Cir. 2010) (omitting internal quotation marks) (quoting Walters v. Reno, 145 F.3d 1032, 1046 (9th Cir. 1998) and Crawford v. Honig, 37 F.3d 485, 487 (9th Cir. 1994)); see Ellis v. Costco Wholesale Corp., 657 F.3d 970, 985 (9th Cir. 2011) ("To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"); see also Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1162 (9th Cir. 2001) ("The record indicates clearly that [the class representative] understands his duties and is currently willing and able to perform them.

1    The Rule does not require more.”).

2          Plaintiffs are adequate class representatives.  The alleged fact-pattern for each of

3    them are similar, if not identical, to the fact-pattern for other Class Members.  Plaintiffs

4    have no conflicts of interest with Class Members, as they share their desire to be paid in

5    full.  Declaration of John Costa (“Costa Decl.”) ¶ 6; Declaration of Kevin Payne (“Payne

6    Decl.”) ¶ 6.  Additionally, Plaintiffs are committed to pursuing the claims of the Class

7    Members, and their motivation in retaining counsel and pursuing this action has been to

8    seek reimbursement for themselves and Class Members.  Costa Decl. ¶¶ 5, 7; Payne Decl.

9    ¶ 5, 7; Harris Decl., ¶¶ 55, 57.

10          Counsel have no conflict of interest with Class Members and have diligently

11    prosecuted this action on behalf of the class.  Counsel has diligently researched the facts

12    of this case, interviewing numerous current and former employees of Defendants,

13    opposing Defendants’ Motion to Strike, and engaging in vigorous negotiations, which

14    ultimately led to the settlement of this matter.  Harris Decl. ¶¶ 23-26.

15    **B.      The Settlement Meets The Requirements For Preliminary Approval**

16          “[T]he preliminary approval stage [i]s an ‘initial evaluation’ of the fairness of the

17    proposed settlement made by the court on the basis of written submissions and informal

18    presentation from the settling parties.”  In re High-Tech Emp. Antitrust Litig., 2013 WL

19    6328811, at *1 (N.D. Cal. Oct. 30, 2013).  A court need not conduct a complete analysis

20    of the fairness factors at this time because “some of these ‘fairness’ factors cannot be

21    fully assessed until the Court conducts the final approval hearing[.]” Lusby v. Gamestop

22    Inc., 297 F.R.D. 400, 412 (N.D. Cal. 2013).  Instead, at this stage, “[p]reliminary

23    approval of a settlement and notice to the class is appropriate if ‘[1] the proposed

24    settlement appears to be the product of serious, informed, non-collusive negotiations, [2]

25    has no obvious deficiencies, [3] does not improperly grant preferential treatment to class

26    representatives or segments of the class, and [4] falls within the range of possible

27    approval.’” Johnson v. Quantum Learning Network, Inc., 2016 WL 4529607, at *1 (N.D.

28    Cal. Aug. 30, 2016) (quoting In re Tableware, 484 F. Supp. 2d at 1079).  The

"decision to approve or reject a settlement is committed to the sound discretion of the trial judge[.]"  In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000), as amended (June 19, 2000) (internal quotation marks omitted).

A few years ago, Rule 23(e) was amended, effective December 1, 2018, to delineate factors that district courts must consider when evaluating a class settlement:

**(2) Approval of the Proposal.** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Plaintiffs' counsel have carefully considered each factor and believe the proposed Settlement Agreement conforms with each requirements.

## 1. The Strength of Plaintiffs' Case

Defendants have disputed every aspect of Plaintiffs' case.  Prior to this case being mediated, Defendant rolled out a company-wide arbitration agreement that employees were required to sign as part of the onboarding process.  Harris Decl. ¶¶ 32-33.  If the action were to proceed with litigation, many of the Class Members' claims would be

subject to arbitration and the action might not proceed on a class-wide basis at all. Further, Defendants have disputed that meal and rest breaks were not properly provided on a timely basis, and asserts that Defendants paid all final wages timely, and any late payment otherwise was not "wilful." Defendant has also argued that it is not a temporary services employer under Cal. Lab. Code § 201.3(a)(1) and is therefore not required to report on its wage statements the temporary services assignments employees worked. If Defendants' arguments prevailed, *none* of the Class Members might be entitled to *any* damages or penalties. The Settlement will provide participating Class Members with substantial payments of penalties and wages commensurate with the strength of their claims. It is therefore more than reasonable. This factor thus weighs in favor of approving the Settlement. While Plaintiffs believe their cases are factually and legally supported, the projected individual recoveries are substantial vis a vis the amounts which might be recovered after years of additional litigation.

## 2. The Likely Duration Of Further Litigation

In most cases, "'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11:50 (4th ed. 2002)). Here, certification issues remain undecided. There are untested legal questions such as whether Defendants are required to comply with Code § 201.3. Continued inquiry into the legal and factual questions unresolved will likely require several more years of litigation. Accordingly, this factor also weighs in favor of approving the settlement.

## 3. The Risk Of Maintaining Class-Action Status Through Trial

Here, no class has been certified and ever after certification might be achieved "there is no guarantee that [a d]efendant w[ill] not move for and obtain decertification of [a c]lass before or during trial." Rodriguez v. West Publ'g Corp., 2007 WL 2827379 at *8 (C.D. Cal. filed Sept. 10, 2007) (citing In re NASDAQ Market-Makers Antitrust

Litig., 187 F.R.D. 465, 476 (S.D.N.Y. 1998)), rev'd on other grounds, 563 F.3d 948 (9th Cir. 2009).  See also Rodriguez, 2007 WL 2827379 at *8 (stating that, "if 'insurmountable management problems were to develop at any point, class certification can be revisited at any time under Fed. R. Civ. P. 23(c)(1)'") (quoting In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. at 476).  With respect to meal-break claims in particular, the California Supreme Court has held that "[a]n employer's duty . . . under . . . section 512 . . . is an obligation to provide a meal period," which is satisfied if the employer "relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break." Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1040 (2012).  This means that an employer is not liable for meal-break violations if the employee voluntarily defers or foregoes a break.  As explained by the Central District of California, there is often "no way of determining on a classwide basis whether [missed breaks] were violations . . . or whether individual class members voluntarily opted to start their meal break late, cut it short, or not take a break at all."  Ordonez v. Radio Shack, Inc., 2013 WL 210223 at *7 (C.D. Cal. filed Jan. 17, 2013).  Accordingly, there is a risk that fewer than all of Plaintiffs' class claims will be sustained.  This factor weighs in favor of approval, particularly in light of the defense argument that a person-by-person determination of the application of their policies requires hundreds of mini-trials.

### 4.  The Settlement Amount Offered

The Total Settlement Amount is $1,350,000.  The settlement is non-reversionary and Defendant will pay an additional amount to fund payroll taxes.  Participating Class Members can expect to receive substantial payments commensurate with the value of their claims.  Settlements awarding just over a small fraction of realistic damages are often approved.  See Harris Decl. ¶¶ 46-47.

When considering the fairness and adequacy of the amount offered in settlement, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness."

1    DIRECTV, 221 F.R.D. at 527 (citation omitted). "[I]t is well-settled law that

2    a proposed settlement may be acceptable even though it amounts to only a

3    fraction of the potential recovery that might be available to the class

4    members at trial." *Id.* (collecting cases).

5    Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving

6    settlement estimated to be as low as 9% of the potential liability). This factor weighs in

7    favor of approving the settlement.

8        Even class settlements that settle for less than three percent of the total exposure

9    are permitted. In Allen v. Bedolla, 787 F.3d 1218 (9th Cir. 2015), the Ninth Circuit

10   reviewed final approval of a settlement in which $373,000 was paid to the class in a

11   settlement involving some 210,000 class members. The value per class member was less

12   than $2 each, much less than 3% of the potential financial exposure sought in the Allen

13   complaint. In 2015, the Ninth Circuit reviewed the propriety of the district court's

14   approval of the settlement, remanding for further examination. Id. at 1220. The Ninth

15   Circuit ultimately affirmed the district court's final approval of the settlement. Bedolla v.

16   Allen, 736 Fed. Appx. 614, 617-618 (9th Cir. 2018).

17       The Allen complaint alleged the following eleven claims: (1) Overtime Wages,

18   Cal. Lab. Code §§ 510 and 1194; (2) Overtime Wages, 29 U.S.C. § 207(a)(1); (3)

19   Waiting Time Penalties, Cal. Lab. Code § 203; (4) Paychecks Issued by an Employer

20   Without an In-State Location for Presentation on Demand without Discount, Cal. Lab.

21   Code § 212; (5) Failure to Provide an Accurate Itemized Wage Statement; (6) Failure to

22   Pay Minimum Wages, Cal. Lab. Code § 1194; (7) Failure to Pay Minimum Wages and 29

23   U.S.C. § 206(a); (8) Illegal Deductions, Cal. Lab. Code § 221; (9) Secretly Paying Wages

24   Lower than Established by Statute while Purporting to Pay Established Wage, Cal. Lab.

25   Code § 223; (10) Penalties Pursuant to PAGA, California Labor Code § 2699; and (11)

26   Violation of the California Business and Professions Code § 17200, et seq. See Request

27   for Judicial Notice ("RJN"), Ex. 1 (Notice of Removal with Apr. 30, 2009 Complaint).

28       Courts regularly evaluate the fairness of a class action settlement focused only on

the defendant's exposure for compensatory damages, exclusive of potential liquidated damages, penalties and civil penalties. <u>Rodriguez v. West Publishing Corp.</u>, 563 F.3d 948, 955 (9th Cir. 2000) ("It is our impression that courts generally determine fairness of an antitrust class action settlement based on how it compensates the class for past injuries, without giving much, if any, consideration to treble damages.").  This approach has been followed in wage and hour cases.  <u>See</u> <u>Miller v. CEVA Logistics USA</u>, 2015 WL 729638, at *7 (E.D. Cal, Feb. 19, 2015) (evaluating fairness of wage and hour class action by comparison to potential exposure exclusive of penalties); <u>Richardson v. Interstate Hotels & Resorts, Inc.</u> 2019 WL 803746 at *3 (N.D. Cal. Feb 21, 2019) (the court evaluated the settlement amount exclusive of penalties).

In securities class settlements, recoveries of less than 3% of compensatory injury are common.  <u>See</u> <u>In re Heritage Bond Litig.</u>, No. 02-ML-1475-DT, 2005 U.S. Dist. LEXIS 13627, at *27-28 (C.D. Cal. Jun. 10, 2005) (median amount recovered in securities class settlements was 2.7% in 2002, 2.8% in 2003, 2.3% in 2004, 3% in 2005 and 2.2 in 2006.)  Prevailing at all in a class action is not the norm.  <u>See</u> <u>Magadia v. Wal-Mart Assocs.</u>, 999 F.3d 668, 671 (reversing judgment on appeal and reducing a verdict of over $100,000,000, including PAGA civil penalties, to zero); <u>Carrington v. Starbucks</u>, 30 Cal. App. 5th 504, 529 (2018) (the trial court awarding just 10% of the potential civil penalty.)[10]

---

[10] <u>Hoffman v. Construction Protective Servs.</u>, 293 Fed. App'x 462, 463 (9th Cir. 2008) (affirming district court because the record contains no evidence that any violation of § 226 was knowing and intentional as required under California law.); <u>Apodaca v. Costco Wholesale</u>, No. CV12-5664 DSF (Ex), 2014 WL 2533427, at *3 (C.D. Cal. June 5, 2014) (Even assuming Apodaca was confused by the meaning of the phrase "float overtime," Costco's failure to clarify this was neither a knowing nor intentional violation of California Labor Code Section 226.); <u>Dalton v. Lee Publ'ns</u>, 2011 WL 1045107, at *5 (S.D. Cal. Mar. 22, 2011) (Plaintiff seeks section 226 damages for "knowing and intentional" failure to supply itemized wage statements to employees and there is no evidence that Defendant's conduct was a "knowing and intentional" or "willful" violation of these provisions; <u>See</u> <u>Reber v. AIMCO</u>, No. SA CV07-0607 DOC (RZx), 2008 U.S. Dist. LEXIS 81790, at *25 (C.D. Cal. Aug. 25, 2008) (employer awarded summary judgment on sections 203 and 226 claims because "a good faith dispute exists as to whether [employees] are exempt"); <u>Harris v. Vector Mktg. Corp.</u>, 656 F. Supp. 2d 1128, 1146 (N.D. Cal. 2009) (summary judgment granted in favor of employer on section 226 claim in case where employer unsuccessfully argued that plaintiff should be considered an independent contractor as a matter of law).

There are myriad class action cases in which settlements for less than 3% of the total possible are approved.  In these cases, it is rare indeed for a complete analysis of all possible recoveries, whether for compensatory damages, liquidated damages, penalties and civil penalties, to be articulated.  As one court wrote:

> Greenwell misunderstands *Kullar*, apparently interpreting it to require the record in all cases to contain evidence in the form of an explicit statement of the maximum amount the plaintiff class could recover if it prevailed on all its claims—a number which appears nowhere in the record of this case. But *Kullar* does not, as Greenwell claims, require any such explicit statement of value; it requires a record which allows "an understanding of the amount that is in controversy and the realistic range of outcomes of the litigation." (*Kullar, supra*, 168 Cal.App.4th at p. 120.) That record exists in this case. We entertain no doubt that the trial court had "an understanding of the amount … in controversy" (*Kullar, supra*, 168 Cal.App.4th at p. 120), despite the absence of a statement of the maximum value of all claims.

Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles, 186 Cal. App. 4th 399, 409 (2010).

### 5.  The Extent Of Discovery And Stage Of The Proceedings

Although the parties have not engaged in formal discovery, Plaintiffs have engaged in significant investigation into the claims in this case, including dozens of witness interviews and review of substantial documents and class data provided by the Defendant before and during the settlement negotiation.  That data was analyzed by Plaintiff's expert.  Harris Decl. ¶¶ 15-18, 24-34.  The Ninth Circuit has found that, "'in the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement.'"  Dunleavy, 213 F.3d at 459.  In negotiating the Settlement Agreement, Class

1  Counsel were provided significant informal discovery sufficient to evaluate the claims.

2  In addition, Class Counsel undertook their own independent investigation to inform their

3  negotiating position, including risk re-evaluation in light of the potentially dispositive

4  defenses noted above.  All told, there was sufficient information to make an informed

5  decision about settlement.  This factor thus weighs in favor of approval.

6  ### 6.  The Experience And Views Of Counsel

7  As reflected in the Declaration of Alan Harris filed herewith, Plaintiff's Counsel

8  have substantial experience in prosecuting class actions, including wage-and-hour

9  actions.  Harris Decl. ¶¶ 58-62.  Counsel are of the opinion that the Settlement

10  Agreement represents an excellent bargain for the Class Members, given the inherent

11  risks, hazards, and expenses of carrying the case through trial.  Id. ¶¶ 31-48.  As the

12  Central District has explained, this weighs strongly in favor of approving the settlement.

13  See Rodriguez, 2007 WL 2827379 at *9 (explaining that "the trial court is entitled to, and

14  should, rely upon the judgment of experienced counsel for the parties").

15  ### 7.  The Reaction Of Class Members

16  The reaction of Class Members to the Settlement Agreement cannot, of course, be

17  known until preliminary approval is given, Class Notice is delivered, and responses are

18  received.  This factor is therefore neutral at the preliminary-approval stage.

19  ### C.   Plaintiffs Satisfy The FLSA Collective Action Certification Standard

20  The factual showing for conditional certification of a FLSA collective action is

21  "modest."  Mitchell v. Acosta Sales, LLC, 841 F. Supp. 2d 1105, 1115 (C.D. Cal. 2011).

22  Courts will approve settlements of both FLSA and Rule 23 claims when the parties

23  expressly allocate settlement payments to the FLSA claims.  Thompson v. Costco

24  Wholesale Corp., 2017 WL 697895 (S.D. Cal. 2017).  Here, the settlement provides that

25  only those who cash their check will be deemed to have opted into the collective action.

26  Significantly, "[b]ecause the standards for certifying an FLSA class and evaluating the

27  fairness of an FLSA settlement are less stringent than those imposed by Rule 23," courts

28  have found "the FLSA requisites satisfied by a showing that Rule 23 requirements have

PLS.' NOT. OF MOT. AND MOT. FOR PRELIMINARY APPROVAL; MEM. OF P. & A. IN SUPP. THEREOF

been met." <u>Khanna v. Inter-Con Sec. Sys., Inc.</u>, 2012 WL 4465558 at *9 (E.D. Cal. Sept. 25, 2012).

**IV.    CONCLUSION**

The Court should grant conditional certification and preliminarily approve the settlement, authorizing the appointment of a settlement administrator to distribute the requested Notice.

DATED:  September 4, 2023                    HARRIS & RUBLE

Alan Harris/*Attorneys for Plaintiffs*

PLS.' NOT. OF MOT. AND MOT. FOR PRELIMINARY APPROVAL; MEM. OF P. & A. IN SUPP. THEREOF