1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

11

J. COSTA and K. PAYNE, individually and on behalf of all others similarly situated,

12

Plaintiffs,

13

14

v.

15

SMUGGLER, LLC, a Delaware Limited Liability Company fka Smuggler, Inc., a California Corporation; RARE BIRD HOLDINGS, INC., a Delaware Corporation; BRIAN CARMODY, an individual; PATRICK MILLING-SMITH, an individual; DIVISION7, LLC, a Delaware Limited Liability Company; and DOE 1 through and including DOE 10,

16

17

18

19

20

21

22

23

Defendants.

24

25

26

27

28

Case No.  2:23-cv-01468-WLH-RAO

**ORDER ON MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CONDITIONAL CERTIFICATION [36]**

Prior to oral argument, which was set for October 27, 2023, all parties submitted on the Court's tentative order, which is now adopted as a final order.

Before the Court is the Motion for Preliminary Approval of Class Action Settlement and Conditional Certification (the "Motion") of Plaintiffs John Costa and Kevin Payne (collectively, "Plaintiffs"). (Docket No. 36). Defendants Smuggler, LLC ("Smuggler"), Rare Bird Holdings, Inc., Brian Carmody, Patrick Milling-Smith, and Division 7, LLC ("Division 7") (collectively "Defendants") do not oppose the Motion. (Notice of Non-Opp'n to & Joint Stip. for Order Granting Mot., Docket No. 37).

The Court, having considered all the papers filed and evidence submitted in conjunction with the Motion, **DENIES** Plaintiffs' Motion without prejudice.

# I. BACKGROUND

## A. <u>Procedural History</u>

Defendants Smuggler and Division 7 are in the business of producing motion pictures. (First Amended Complaint ("FAC"), Docket No. 24 ¶ 12). Defendants hire employees on a freelance basis. (*Id.* ¶ 13). Several times throughout 2022, Defendants hired named Plaintiffs as freelance crew members—work for which, Plaintiffs contend, Defendants did not pay in accordance with California state law. (*Id.* ¶¶ 19–22). On January 18, 2023, Plaintiffs brought this class action against Defendants in Los Angeles County Superior Court, alleging seven counts under the California Labor Code and the California Business and Professions Code. (Complaint, Docket No. 1-4 ¶¶ 17–22). On February 24, 2023, Defendant Smuggler removed this action to the United States District Court for the Central District of California. (Notice of Removal, Docket No. 1). On March 31, 2023, Defendants filed their Motion to Strike Portions of Plaintiffs' Complaint. (Docket No. 15). The Court granted the Motion to Strike with leave to amend on June 21, 2023. (Order, Docket No. 25).

On July 11, 2023, Plaintiffs filed their FAC, which is the operative complaint. The FAC cured the problems with the original Complaint and added four more causes

of action under the California Private Attorney's General Act ("PAGA"), Cal. Lab. Code §§ 2698 et seq.; the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq.; and the California Labor Code. (Id.).

On July 19, 2023, the Court referred the case to private mediation. (Order/Referral to ADR, Docket No. 28). On July 25, 2023, Defendants filed a Motion to Dismiss. (Docket No. 31). On July 27, 2023, the Parties attended a private mediation. (Mot. at 3). Prior to mediation, in addition to the efforts described above, Plaintiffs "engaged in substantial investigation and informal discovery," attended "numerous meetings and conferences between Class Counsel and Defendants' counsel," conducted "review and analysis of payroll records," and "reviewed documents of and spoken with at least nine other individuals who have worked for either or both of [Smuggler] and [Division 7] during one or more the relevant Class Periods." (Decl. of Alan Harris in Supp. of Mot. ("Harris Decl."), Docket No. 36-4 ¶¶ 23–24).

Additionally, Plaintiffs engaged an expert in statistics to analyze employment records from the class period. (Id. ¶ 16). The statistician used two methods to determine Defendants' liability on the California Labor Code section 203 claim. (Id.). Even by the more forgiving method, the statistician found that the penalty for tardy payment of final wages under section 203 alone came out to more than $52 million. (Id. ¶ 17).

At mediation, the Parties negotiated under the oversight of mediator Monique Ngo-Bonnici. (Mot. at 3). Ms. Ngo-Bonnici has seventeen years of experience in labor and employment matters. According to counsel for Plaintiffs, "[i]n the process of securing a settlement, the … analysis of possible penalties … owing under Code section 203 seemed to be central …. At the end of the day, the exposure for this crushing, single aspect of the case was greater than all others, combined." (Harris Decl. ¶ 18). After approximately twelve hours of negotiations, which Plaintiffs' counsel characterizes as "vigorous, lengthy, truly arm['s] length, and involv[ing] a contentious—albeit collegial—debate," the Parties accepted the mediator's proposal. (Harris Decl. ¶ 26;

1   Mot. at 3).  That proposal is embodied in the September 1, 2023, Settlement Agreement

2   that is now before the Court for preliminary approval.  (Harris Decl. ¶ 26; Settlement

3   Agreement, Docket No. 36-5).

4       On August 2, 2023, the Parties jointly filed a Notice of Settlement and requested

5   that the Court vacate the hearing on the Motion to Dismiss.  (Docket No. 34).  On

6   August 9, 2023, the Court vacated the hearing on the Motion to Dismiss and ordered

7   Plaintiffs to file a motion for preliminary approval to be heard on September 29, 2023.

8   (Docket No. 35).  Plaintiffs filed the instant Motion on September 4, 2023.

9       On September 27, 2023, the Court took the Motion under submission.  (Docket

10  No. 38).  On September 29, 2023, the Court un-submitted the matter and ordered the

11  parties to submit further briefing regarding the adequacy of the proposed settlement

12  amount of $1,350,000, and re-setting the hearing to October 27, 2023.  (Docket No. 39).

13  Plaintiffs submitted their supplemental briefing on October 13, 2023.  (Docket Nos. 40,

14  41).

15          **B. <u>Settlement Terms</u>**

16              *1.    Proposed Class*

17      The proposed class as defined by the Settlement Agreement includes "all persons,

18  excluding those on permanent Staff payroll who are employed on a continuous basis,

19  who were paid wages by [Smuggler] and/or [Division 7] on account of services

20  provided in the production of Motion Pictures during the Class Period in California."

21  (Settlement Agreement ¶ 6).  "The 'Class Period' is January 18, 2019[,] through and

22  including July 28, 2023."  (*Id.* ¶ 4).  There is also a "PAGA Period" that spans from

23  January 13, 2022, through and including July 28, 2023.  (*Id.* ¶ 7).

24              *2.    Payment Terms*

25      Settling Defendants agree to pay $1,350,000.00 (the "Total Settlement Amount")

26  subject to the terms and conditions of the Agreement.  (*Id.* ¶ 15(a)).  No portion of the

27  Total Settlement Amount will revert to any party.  (*Id.* ¶ 15(b)).

28

                                        4

According to Plaintiffs' counsel and an expert Plaintiffs retained to opine on the matter, the maximum potential recovery in this case, barring Defendants' bankruptcy, is approximately $4,000,000. (Harris Decl. ¶ 19; Decl. of Jon Katzman ("Katzman Decl."), Docket No. 41, Exh. 1 ¶¶ 10–11). They came to this number by reviewing the documents filed in this case and public records regarding Smuggler's assets, and taking into account Smuggler's status as a production company "with finite resources." (Harris Decl. ¶ 11; *see also id.* ¶¶ 9–10; Katzman Decl. ¶¶ 4, 6–12). According to Plaintiffs, therefore, the Total Settlement Amount of $1,350,000 represents a recovery of 33.75% of maximum value. (Harris Decl. ¶ 46).

### 3.   *Attorney's Fees, Costs, and Service Awards*

The Settlement Agreement authorizes class counsel to petition the Court for approval of the following: (1) a Class Representative Service Payment of up to $7,500 for each Plaintiff (*Id.* ¶15(e)); (2) attorney's fees in an amount no greater than $450,000 (or one-third of the Total Settlement Amount) to class counsel (*Id.* ¶ 15(f)); (3) documented out-of-pocket litigation costs incurred in this matter of an amount not more than $35,000 (*Id.*); (4) allocation of $50,000 of the Total Settlement Amount to settle the PAGA claim, with 75% of the apportioned PAGA settlement amount ($37,500) paid to the State of California Labor Workforce and Development Agency, and the remaining 25% ($12,500) to be divided among all Class Members in California during the PAGA period (*Id.* ¶¶ 8, 15(d)); and (5) Settlement Administrator expenses in an amount to be later determined.[1]

The remainder of the Total Settlement Amount after the above-mentioned allocations—the Net Settlement Proceeds—will be distributed equally among the Class Members who do not opt out of the Settlement. (*Id.* ¶15(b)). Plaintiffs believe equal distribution is appropriate because of the uniformly short-term, freelance nature of Class

---

[1] Plaintiffs represent that they will request administration costs of up to $45,000. (Harris Decl. ¶ 54).

Members' employment and the commonality of the claims amongst the Class Members. (Mot. at 4–5). The Net Settlement Proceeds are "estimated to be, at minimum, $755,000 ($1,350,000 Total Settlement Amount - $15,000 enhancement awards - $450,000 attorney's fees - $35,000 attorney's costs - $45,000 claims administration costs)." (*Id.* at 4). This results in an estimated net recovery per Class Member of $98.69. (*Id.* at 5).

### 4. *Releases*

The Settlement Agreement specifies that on the date Defendants fully fund the Total Settlement Amount and pay all employer-side payroll taxes owed on the wage portion of the payments, Plaintiffs and the Class Members will release Defendants of "all claims that were alleged, or reasonably could have been alleged, based on the Class Period facts stated in the Complaint." (Settlement Agreement ¶ 18 (a)). However, "only those Participating Class Members who cash their settlement payment checks will be deemed to have [released Defendants] … from all claims that were alleged, or reasonably could have been alleged … under the Fair Labor Standards Act." (*Id.*). The back of each individual check will explain that, by cashing the check, the Class Member "consent[s] to join in the [FLSA] portion of the Action, elect[s] to participate in the settlement of the FLSA claims, and agree[s] to release all … FLSA claims that are covered by the Settlement." (*Id.*).

### 5. *Notice to Settlement Class*

Within ten calendar days of the Court's entry of an order granting preliminary approval of the settlement, Defendants will provide the Settlement Administrator with a list of all Class Members. (*Id.* ¶ 20). Within fourteen days of Defendants' provision of the list of Class Members, the Settlement Administrator will send all Class Members Class Notice via first class mail. (*Id.* ¶ 21). At least ten days before the hearing on the Motion for Final Approval, the Settlement Administrator will provide a declaration of due diligence and proof of mailing with regard to mailing the Class Notice. (*Id.* ¶ 23). "Each Class Member shall have 45 days after the Administrator mails the Class Notice

(plus an additional 14 days for Class Members whose Class Notice is re-mailed) to challenge the number of Class Pay Periods and PAGA Pay Periods (if any) allocated to the Class Member in the Class Notice." (*Id.* ¶ 25). Plaintiffs filed a proposed Class Notice with the Motion that explains, *inter alia*, that Class Members who do not opt out will release all of their class claims, and that individuals who cash their settlement checks will release all of their claims under the FLSA. (Docket No. 36-6 at 4). It also explains how a Class Member may object to the Settlement. (*Id.* at 6–7).

## II. DISCUSSION

Federal Rule of Civil Procedure 23(e) requires judicial review and approval of any class settlement. Below, the Court discusses 1) conditional certification of the class action, 2) conditional certification of the FLSA collective action, and (3) approval of the proposed Settlement.

### A. Class Action Conditional Certification

Where a class has yet to be certified, the Court must conditionally certify a class for purposes of settlement by determining if the proposed class satisfies the requirements of Rule 23(a) and one of the three categories of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Under Rule 23(a), the plaintiff must show: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The Court will address each Rule 23(a) and Rule 23(b)(3) factor in turn.

#### 1. Numerosity

Under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impractical." *Id.* While "[n]o exact numerical cut-off is required, … numerosity is presumed where the plaintiff class contains forty or more members." *In re Cooper Cos.*

*Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009).

Here, the parties represent that there are approximately 7,650 potential Class Members.    (Harris Decl. ¶ 27).    Thus, the putative class meets the numerosity requirement.  *See, e.g.*, *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013) (finding that class of 500 putative class members satisfied the numerosity requirement).

### 2.  Commonality

The second factor under Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a).  Courts have held that even a "single common question will do."  *Wal-Mart v. Dukes*, 564 U.S. 338, 359 (2011).  The common question cannot just be any question, however; it must be one that can "generate common answers apt to drive the resolution of the litigation." *Id.* (quoting Richard Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)) ("What matters to class certification … is not the raising of common 'questions'—even in droves—but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."). In class actions challenging employer conduct, the plaintiff must present "significant proof" that the employer operated under a uniform policy or practice to show commonality.  *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 543 (9th Cir. 2013) (quoting *Dukes*, 564 U.S. at 353).

Here, Plaintiff alleges that Defendants engaged in an "illegal policy and/or practice of failing to pay hourly wages, failing to pay minimum and overtime wages, failing to provide Class Members rest and meal periods without legal compensation, and fail[ing] to provide proper wage statements."  (FAC ¶ 54).  Plaintiffs assert that some of the common questions of law and fact include: "(i) whether the form of the wage statements issued to all Class Members complied with [California Labor] Code § 226(a); (ii) whether Defendant failed to provide Class Members who were allegedly required to have radios operating at all times with proper meal and rest breaks; and (iii)

whether systematic payroll practices and/or the failure to pay timely meal and rest break premiums resulted in the late payment of final wages to all Class Members." (Mot. at 10). This conduct affects each putative class member in the same manner. Accordingly, the Court preliminarily finds that Defendants' practices establish significant common questions of fact and law sufficient to satisfy commonality.

### 3. Typicality

The third factor under Rule 23(a)(3) requires that "the claims or defenses of the representative part[y] are typical of the claims or defenses of the class." The purpose of the typicality requirement is "to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992), *overruled on other grounds by Dukes*, 564 U.S. at 347–48. Typicality "is a permissive standard, and 'representative claims are "typical" if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites*, 209 F.R.D. 159 (C.D. Cal. 2002) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). The Ninth Circuit does not "insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001) (*abrogated on other grounds by Kirola v. City & Cnty. of San Francisco*, No. 21-15621, 2023 WL 2851368, at *1 (9th Cir. Apr. 10, 2023)).

Here, like the other Class Members, Plaintiffs were temporary employees of Defendants during both the Class Period and the PAGA Period who were "subject to the same onboarding procedures, payroll process, … policies and procedures regarding the payment of wages" and were "paid wages by [Defendants] in the same manner as the other class members and received wage statements that were substantially identical in format." (Decl. of Kevin Payne, Docket No. 36-1 ¶ 6; Decl. of John Costa, Docket

No. 36-2 ¶ 6).  Plaintiffs' claims arise from the same alleged uniform policies and practices as the rest of the Class Members'.  As such, Plaintiffs' claims are based on the same facts and legal theories applicable to the rest of the Class.  Accordingly, the Court finds that typicality is satisfied.

### 4. Adequacy

The fourth factor under Rule 23(a)(4) requires that Plaintiff and class counsel adequately represent absent Class Members.  To satisfy the adequacy inquiry, courts must ask two questions: "(1) Do the representative [p]laintiff[s] and their counsel have any conflicts of interest with other class members, and (2) will the representative [p]laintiff and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).  Here, Plaintiffs contend that Plaintiffs and Class Counsel have no conflict of interest with other Class Members.  (Mot. at 15).  Furthermore, Plaintiffs' counsel contends it is experienced class counsel and supports its claims by citing cases previously litigated by the various attorneys working on the matter, including a long list of class action labor cases.  (Harris Decl. ¶¶ 58–62).  Accordingly, the Court finds that Plaintiff and Class Counsel satisfy the adequacy of representation factor.

### 5. Rule 23(b)(3) Requirements

Plaintiffs seek certification under Rule 23(b)(3), which requires the Court to find "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "The requirement is satisfied if a plaintiff establishes that a 'common nucleus of facts and potential legal remedies dominates' the litigation."  *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 473 (E.D. Cal. 2009) (quoting *Hanlon*, 150 F.3d at 1022).

Here, as discussed above, Plaintiffs' claims arise from the same alleged uniform policies and practices as the rest of the Class Members'.  Likewise, the same facts and

legal theories are applicable to the rest of the Class Members.  The common nucleus of facts and potential legal remedies can be addressed for all Class Members in a single adjudication.  Moreover, the significant size of the class, potential expensive cost of individual litigation, and the strain on judicial resources support adjudicating the claims in a class action.  Accordingly, the Court finds that Rule 23(b)(3) is satisfied.

### B. <u>FLSA Collective Action Conditional Certification</u>

In addition to the class claims, the FAC also includes a collective action claim under the FLSA.  (*See* FAC ¶¶ 91–104).  The FLSA allows employees to bring an action against an employer on behalf of themselves "and other employees similarly situated." 29 U.S.C. § 216(b).  Where an action combines both FLSA and class claims, "certification of a FLSA collective action and a Rule 23 wage and hour class action must be analyzed as separate analytical steps."  *Millan v. Cascade Water Servs.*, Inc., 310 F.R.D. 593, 601 (E.D. Cal. 2015).

"[C]ollective actions under the FLSA are not subject to the requirements of Rule 23 … for certification of a class action."  *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1009 (N.D. Cal. 2010).  While a district court considering a Rule 23 preliminary certification must make "an affirmative decision" to allow the class action to go forward, "the district court in a collective action plays no such gatekeeping role." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1101 (9th Cir. 2018).  The lower bar for conditional certification of a FLSA collective action is due, at least in part, to the fact that an individual employee must opt in to join the collective action; therefore, unlike in a Rule 23 action, "parties who do not opt in" to the collective action "are not bound by the settlement."  *Millan*, 310 F.R.D. at 607.

In light of § 216(b)'s requirement that other members of the collective action be "similarly situated," "[a] collective can only be maintained … to the extent party plaintiffs are alike in ways that matter to the disposition of their FLSA claims." *Campbell*, 903 F.3d at 1114.  Additionally, "[i]f the party plaintiffs' factual or legal

similarities are material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment." *Id.* (emphasis omitted).  At the preliminary approval stage, "[t]he level of consideration is lenient" and is "loosely akin to a plausibility standard." *Id.* at 1109 (quotation omitted).

The Court finds that the party plaintiffs are "similarly situated" for purposes of conditionally certifying the FLSA collective action.  For all party plaintiffs, the FLSA claim rests on Defendants' alleged failure to timely pay wages for similar work.  These factual and legal similarities are "material to the resolution of" the FLSA claim.  The FLSA collective action is therefore conditionally certified.

## C.    Approval of Proposed Settlement

Next, the Court must determine whether to preliminarily approve the Settlement. To preliminarily approve a class action settlement, the Court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2).  *See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).  Specifically, the Court must examine the following factors:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
(i) the costs, risks, and delay of trial and appeal;
(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
(iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  In other words, a court may preliminarily approve a class action "[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within

the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted).

### 1. *Adequacy of Counsel*

As discussed above, proposed class counsel, Harris & Ruble, is experienced class counsel with prior experience representing plaintiffs in complex class actions in both state and federal courts. (Harris Decl. ¶¶ 58–62). In this matter, class counsel has adequately represented Plaintiffs and the putative class. The settlement is the culmination of class counsel's work through various phases of litigation including investigation, filing the action, a motion to strike, discovery, and settlement negotiations. Accordingly, this factor weighs in favor of preliminary approval.

### 2. *Arm's-Length Negotiation*

Based on Plaintiffs' assertions, the settlement negotiations and resulting Agreement appear to have been achieved at arm's length. The negotiation process took twelve hours, was "vigorous, lengthy, truly arm['s] length, and involved a contentious—albeit collegial—debate," and occurred before a private mediator experienced in complex labor and employment matters. (*Id.* ¶¶ 25–26); *see also Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666–67 (E.D. Cal. 2008) (noting the parties' enlistment of "a prominent mediator with a specialty in [the subject of the litigation] to assist the negotiation of their settlement agreement" as an indicator of non-collusiveness) (*citing Parker v. Foster*, No. 05–0748, 2006 WL 2085152, at *1 (E.D. Cal. July 26, 2006)). Prior to mediation, the parties engaged in informal discovery and met and conferred multiple times. (Harris Decl. ¶ 23). Plaintiffs' counsel also engaged an expert statistician to determine Defendants' potential liability for missed payments. (*Id.* ¶ 15).

In sum, the Court is satisfied that the Agreement was the product of "serious, informed, non-collusive negotiations." *See Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016). Accordingly, this factor weighs in favor of preliminary approval.

3.     *Adequacy of Relief and Equitable Treatment*

These two factors—the "substantive requirements" of Rule 23(e)(2)—take into account, in relevant part, "(1) the amount of the settlement in light of the class's potential recovery, discounted by the likelihood of plaintiffs prevailing at trial"; (2) "unreasonably high attorney's fees"; (3) "unduly preferential treatment of class representatives"; (4) "deficient notice plan"; (5) "plainly unfair allocation scheme"; and (6) "overly broad releases of liability."  4 Newberg and Rubenstein on Class Actions § 13:15 (6th ed.)  The Court finds that the proposed relief is not adequate, even at this preliminary stage, because the proposed Class Notice and releases suffer from obvious deficiencies.

a.  Value and Allocation of Settlement

The overall value of the Settlement appears to be adequate.  In general, a trial presents a serious risk due to the uncertainty of the outcome and the expensive cost of litigation.  "Even a fractional recovery of the possible maximum recovery amount may be fair and adequate in light of the uncertainties of trial and difficulties in proving the case." *Millan*, 310 F.R.D. at 611.

Based on the experience of Plaintiffs' counsel and on Plaintiffs consultation with a retained expert, the maximum potential recovery is $4,000,000.  (Harris Decl. ¶ 19; Katzman Decl. ¶¶ 10–11).  Plaintiffs' expert bases his calculation in part on the fact that a major bank has perfected a lien on all of Smuggler's assets.  (*Id.* ¶ 11).  The result, he opines, is that "were Smuggler hit with a large judgment, it would likely seek bankruptcy court protection, during which proceeding the only beneficiary might well be" the bank.  (*Id.*).

Plaintiffs assert that a recovery of $1,350,000 thus represents 33.75% of the maximum potential recovery.  Plaintiffs base this percentage, however, on the Total Settlement Amount, not on the Net Settlement Proceeds.  "It is the practice among the district courts in the Ninth Circuit to arrive at the recovery percentage by dividing the

14

maximum verdict value by the amount actually distributed to class members." *Hudson
v. Libre Tech. Inc.*, No. 3:18-CV-1371-GPC-KSC, 2019 WL 5963648, at *11 (S.D. Cal.
Nov. 13, 2019) (collecting cases). Plaintiffs should have used the amount of Net
Settlement Proceeds—approximately $755,000—to calculate the percentage of
recovery. *Id.* This results in a recovery of approximately 18.9% of the maximum
potential recovery. Nevertheless, the Court finds that this recovery ratio is adequate
given the contested nature of the claims and the uncertainty and expense of trial. *See
Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d
615, 624 (9th Cir. 1982) (finding that a proposed class action settlement is "not to be
judged against a hypothetical or speculative measure of what might have been achieved
by the negotiators" given the uncertainty of litigation and avoidance of expensive and
protracted litigation).

The maximum collectable attorneys' fees amount of $450,000 is high, however.
Courts have discretion to use either a percentage or the lodestar method. *Vizcaino v.
Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Using the percentage method,
the Ninth Circuit has set a benchmark for attorneys' fees in common fund cases at 25%
of the fund. *Id.* ("This circuit has established 25% of the common fund as a benchmark
award for attorney fees."). The Court will consider the specific circumstances of this
matter in its decision to award attorneys' fees and reasonable expenses. *See, e.g.*, *id.*
(finding that an award of 25% of the fund was justified by "excellent results,"
"extremely risky" litigation, and more than a decade of litigation). Proposed class
counsel is advised to file with its fee petition a detailed breakdown of the hours
reasonably spent and costs reasonably incurred in representing the Plaintiffs.

Additionally, the Court questions the fairness of the $7,500 awards to both lead
Plaintiffs given the potential disparity between the Plaintiffs' awards compared to the
award for a typical class member. If no Class Member opts out of the settlement, each
claimant would receive only $98.69. (Mot. at 5). "Given this explicit disparity and the

utter lack of evidence demonstrating the quality of [Plaintiffs'] representative service, the court may be reticent to ultimately approve the parties' proposed settlement." *Alberto*, 252 F.R.D. at 669. Before final approval, therefore, the parties must present evidence of the named Plaintiffs' "substantial efforts taken as class representative to justify the discrepancy between [their] award[s] and those of the unnamed plaintiffs." *Id.* Factors relevant to determining the fairness of an award to a named plaintiff include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, ... the amount of time and effort the plaintiff expended in pursuing the litigation ... and reasonabl[e] fear[s of] workplace retaliation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (alterations and omissions in original) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Except for the above concerns, the Court finds that the proposed settlement does not provide preferential treatment to any Class Member. Because of the short-term, freelance nature of Class Members' work for Defendants, the proposal to split distribute the fund equally appears to be fair. This factor weighs in favor of preliminary approval.

### b. Obvious Deficiencies

While the concerns regarding counsel's and named Plaintiffs' portion of the Settlement may be addressed at a later stage, deficiencies with the proposed Class Notice and releases, as well as the Settlement fund, prevent the Court from granting preliminary approval. As discussed above, while Rule 23 requires individuals to opt out to avoid releasing their class claims, the FLSA requires that individuals opt *in* to the collective action such that they are bound by a settlement. *See Millan*, 310 F.R.D. at 607. The opt-in procedure under FLSA requires that a party plaintiff "gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). An individual must have the opportunity to choose whether to remain part of the class, the FLSA collective action, both, or neither. Here, the proposed Class Notice gives recipients no opportunity to choose one without

the other; it is therefore deficient.

Relatedly, there is no provision in the Settlement Agreement creating separate funds for the class claims and the FLSA claim. "Courts that have approved settlements releasing both FLSA and Rule 23 claims generally do so only when the parties expressly allocate settlement payments to FLSA claims." *Schmidt v. Vision Serv. Plan*, No. 2:20-CV-2400-KJN, 2023 WL 5613103, at *4 (E.D. Cal. Aug. 30, 2023) (citing *Thompson v. Costco Wholesale Corp.*, 2017 WL 697895, at *8 (S.D. Cal. Feb. 22, 2017); *Millan*, 310 F.R.D. at 602). The parties need to remedy this deficiency before the Court will preliminarily approve the Settlement.

Finally, and for similar reasons, the procedure by which an individual opts in to the FLSA claim is deficient. The Settlement Agreement and the proposed Class Notice state that "those Participating Class Members who cash their settlement payment checks will be deemed to have [released Defendants] … from all claims that were alleged, or reasonably could have been alleged … under the Fair Labor Standards Act." (Class Notice at 4; Settlement Agreement ¶ 18(a)). The back of each individual check will explain that, by cashing the check, the Class Member "consent[s] to join in the [FLSA] portion of the Action, elect[s] to participate in the settlement of the FLSA claims, and agree[s] to release all … FLSA claims that are covered by the Settlement." (*Id.*). The result is that individual Class Members who do not opt out of the class must choose between refraining from cashing the check and releasing their Rule 23 claims without recovering, or cashing the check and releasing both their FLSA claims and the Rule 23 claims. "Many courts, having consulted § 216(b)'s requirements, have rejected this opt-in by settlement check proposal." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 969 (N.D. Cal. 2019) (collecting cases); *see also Hudson*, 2019 WL 5963648, at *8 (finding that opt-in by cashing check "flies squarely in the face of the FLSA"). The requirement of allowing party plaintiffs to choose which claims to release and which claims to recover for, paired with the requirement that a party plaintiff opting in

to the FLSA claim must "give[] his consent in writing" that is filed with the court, renders this approach unworkable. *See* 29 U.S.C. § 216(b). The Motion is therefore **DENIED** for failure to establish a sufficient opt-in procedure.

## III. CONCLUSION

Based on the foregoing:

1.  The proposed class as defined by the Settlement Agreement is preliminarily and conditionally approved for settlement purposes because it satisfies the requirements of Rules 23(a) and (b)(3);

2.  The FLSA collective action is conditionally certified for settlement purposes;

3.  Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Conditional Certification is **DENIED** without prejudice.

Plaintiffs are granted 45 days from the date of this Order to file a renewed motion that addresses the issues with the FLSA release discussed above.

**IT IS SO ORDERED.**

Dated:  October 27, 2023

_____

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE